```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

Cheryl Mary Shannon and            :
Robert F. Shannon,                 :
assignees of Marcial Gonzalez      :
                                   :
    Plaintiffs :    Case No. 3:13-CV-1432
                                   :
    v.         :
                                   :
New York Central Mutual            :    (Judge Richard P. Conaboy)
Insurance Company                  :
                                   :
    Defendant  :

_____

Memorandum

    We consider here two motions. The first of these is a Motion to Strike (Doc. 12) filed by Plaintiffs Cheryl Marie and Robert F. Shannon ("Plaintiffs") on July 23, 2013. Specifically, Plaintiffs seek to strike Paragraph 120 of the Affirmative Defenses (Doc. 10) filed by Defendant New York Central Mutual Life Insurance Company ("Defendant" or "New York Central") on July 8, 2013. The second motion is Plaintiff's Motion to Quash Subpoenas (Doc. 19) filed September 10, 2013. The object of this motion is to quash numerous subpoenas directed to various employers and medical providers who have treated Plaintiff Cheryl Marie Shannon. The parties have briefed their respective positions and both motions are ripe for disposition. We shall consider each in turn.

I.    Background.

    This case concerns Plaintiff's allegations that Defendant, the

1

insurer of the vehicle that caused injuries to Plaintiff Cheryl Marie Shannon in an automobile accident that occurred on March 6, 2003, violated its duty of good faith to its insured by failing to offer the policy limits ($25,000.00) in settlement in a timely manner and, thus, violated the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371.  Plaintiffs contend further that between July 1, 2003 (the date Plaintiff's counsel first communicated with the Defendant) and February 24, 2004 (the date that Plaintiffs rejected Plaintiff's final offer of ($12,500.00) their counsel provided Defendant with ample medical documentation to conclude that the Plaintiff's damages easily exceeded the policy limits.

On March 8, 2004, Plaintiffs filed a lawsuit in the Lackawanna County Court of Common Pleas against Marcial Gongalez, the driver of the insured vehicle.[1]  Plaintiffs aver that Defendant's counsel finally offered the $25,000.00 policy limit on September 1, 2004. Plaintiff's contend that they rejected this offer because it came only after they had incurred the time and expense of written discovery and depositions.  (Doc. 9 at ¶ 29).  This case ultimately went to trial and concluded with a jury award of $1,106,000.00 that resulted in a molded verdict of $906,000.00 in compensatory damages against Defendant's insured after deducting $200,000.00 that the Plaintiffs had received from their own carrier.

---

[1] The Plaintiffs have standing to sue in this case due to an assignment from Marcial Gonzalez, Defendant's insured in the Lackawanna County personal injury action.

II. Legal Discussion.

    A.    Plaintiff's Motion to Strike.

Paragraph 120 of Defendant's Answer with Affirmative Defenses sets forth a lengthy series of allegations to the effect that Plaintiff's counsel in the Lackawanna County action orchestrated what Defendant describes as a "bad faith set-up" to obtain punitive damages available under the Pennsylvania Bad Faith Statute that dwarfed the minimal limits of Defendant's insured's policy.[2] Beyond that, paragraph 120(g) and (h) attribute to Plaintiff's trial counsel violations of unspecified state and federal criminal statutes.

The Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. §8371, states:

> In an action arising under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take all the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Assess court costs and attorneys fees against the

---

[2] Defendant defines this "bad faith set-up" as "a quick settlement demand, followed by a quick closing of the window before important information is provided so that any subsequent limits offers by the insurer are bemoaned as too late." (Doc. 18 at 9, n. 3).

3

insurer.

As a federal court sitting in diversity it is axiomatic that we must apply the substantive law of Pennsylvania here. The standard for determining whether an insurer has acted in bad faith under Pennsylvania Law has been set forth in a two-part test, both parts of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded the fact that it lacked such a reasonable basis. Terletsky v. Prudential Property and Casualty Insurance Company, 437 Pa. Super. 108, 125 (1994), appeal denied, 540 Pa. 641 (1995). Our Circuit has predicted that, should the Pennsylvania Supreme Court actually confront the question of how to determine bad faith, the Pennsylvania Supreme Court would adopt the Terletsky test. See Klinger v. State Farm Mutual Insurance Company, 115 F.3d 230, 233 (1997). Accordingly, this Court is compelled to look at this case through the Terletsky lens.

In order to assess whether Defendant exhibited bad faith vis-a-vis its insured, it is necessary to review the various communications that passed back and forth between the insurer and Plaintiff's counsel during the negotiations that preceded the filing of the third party action in the Lackawanna County Court of Common Pleas. Only in that way can the fact finder answer the ultimate question here - - whether, at some point before September

4

1, 2004, when Defendant finally offered its policy limits, the Defendant had enough information to indicate that the injured party's damages exceeded the value of the policy limits and, thus, the Defendant unreasonably exposed its insured to the sort of financially crippling excess verdict that resulted in this case.

Most of Paragraph 120 seems reasonably related to New York Central's maintenance of its defense in this matter. Rule 8 (c) of the Federal Rules of Civil Procedure provides, in pertinent part, that a party must set forth various enumerated affirmative defenses "and any other matter constituting an avoidance or affirmative defense." The Court finds that, for the most part, the allegations contained in Paragraph 120 would, if proven, assist in establishing an "avoidance" under the terms of Rule 8 (c). [3] Accordingly most of Paragraph 120 will remain intact.

However, the Court also concludes that subsections "g" and "h" of Paragraph 120 must be stricken. Subsections "g" and "h" attribute to the Plaintiff's counsel violations of unspecified state and federal criminal statutes. In light of the fact that there are literally hundreds of such statutes, the allegations in Paragraph 120 (g) and (h) do not comport with the "fair notice" requirement that represents the core of the pleadings process in the Federal Rules of Civil Procedure. More specifically, to comply

---

[3] The Court also finds that these allegations may not provide an affirmative defense because Defendant cites no Pennsylvania appellate case that confirms the existence of a "bad faith set-up" defense.

5

with the pleading requirements of Rule 8(a)(2) that the pleader provide "a short and plain statement of the claim", it is also necessary that the pleading give fair notice of the nature of the claim and the grounds upon which it rests. Swierkiewicz v. Sorema N. A. 534 U.S. 506, 512 (2002), citing Conley v. Gibson, 335 U.S. 41, 47 (1957); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Subsections "g" and "h" of Paragraph 120 simply do not comport with the above-referenced "fair notice" standards and accordingly must be stricken.[4] An Order consistent with this determination will be filed contemporaneously with this memorandum.

B. Plaintiff's Motion to Quash.

Defendant has served subpoenas on Plaintiff's counsel for various records concerning Plaintiff Cheryl Marie Shannon that are in the possession of numerous medical providers, three employers and two insurers. Plaintiff seeks to quash these subpoenas as unduly burdensome, duplicative and irrelevant.

With respect to Plaintiff's assertion that these subpoenas are unduly burdensome, we note that none of the record custodians for the information Defendant seeks have advised the Court that it would be oppressive or unduly burdensome to comply with Defendant's request. Moreover, in this day of computerized record keeping,

---

[4] The Court also notes that this is a civil matter and the Court does not need to hear further hazy allegations of criminal behavior.

such a claim would be facially suspect. The Court will not quash these subpoenas on the basis that they are unduly burdensome.

With respect to Plaintiff's assertion that the information sought through these subpoenas has already been provided to the Defendant during the course of the action in the Lackawanna County Court of Common Pleas, Defendant contends that the only records received by its counsel in the Lackawanna County action via subpoena were provided by Fitness Quest, USAA, and Fortis Insurance. (Doc. 22 at 12). Consistent with this admission, the subpoenas directed to Fitness Quest, USAA, and Fortis Insurance will be quashed as duplicative.

With respect to Plaintiff's assertion that the information sought through these subpoenas is categorically irrelevant, Plaintiff contends: "The focus of the relevant evidence for the fact finder in this action is what evidence the Defendant was provided as to the Plaintiff's injuries and damages, when such evidence was obtained, and what, i.e. investigation and evaluation, the Defendant did with said evidence." (Doc. 21 at 10-11). In response, the Defendant asserts that Plaintiff is seeking to improperly narrow the scope of this Court's inquiry. Defendant contends that "...if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the insured did not rely on that reason, there cannot, as a matter of law, be bad faith...." Williams v. Hartford Casualty Insurance Company, 83

7

F.Supp. 2d 567, 574 (ED.Pa. 2000).

The Court must observe that, while the opinions of other district judges are entitled to persuasive weight, they do not constitute controlling precedent. This Court is mindful that the purpose behind the Pennsylvania Bad Faith Statute was the legislature's intent to protect insureds from unreasonable denials of coverage. See General Accident Insurance Company v. Federal Kemper Insurance Company, 452 Pa. Super. 581, 587-88 (1996). Given the remedial purpose underpinning the Bad Faith Statute, we are not persuaded that permitting an insurer to evade its statutory obligation due to some fortuitous fact to which it was oblivious is consistent with the legislature's intent. [5] Nevertheless, consistent with the liberal policies that govern discovery in the federal courts, we will direct Plaintiff to provide the records requested in the subpoenas in question (other than those listed above as duplicative) with the proviso that these subpoenas should be interpreted to include only the relevant records as they existed on November 9, 2010, the date the jury verdict in the Lackawanna County Court of Common Pleas fixed the value of Plaintiff's damages.

---

[5] One exception might be a case in which a claimant purposefully obstructs an insurer's investigation of a claim.

An Order consistent with this determination will be filed contemporaneously with this Memorandum.

BY THE COURT

                                          s/Richard P. Conaboy
                                          Honorable Richard P. Conaboy
                                          United States District Court

Dated: November 20, 2013

9